UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CRAIG HELMKER
        Plaintiff,

v.

Case No. 1:14-CV-0902

HON. PAUL L. MALONEY

COMMISSIONER OF SOCIAL
SECURITY
        Defendant.
                                   /

## OPINION

This is a social security action brought under 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). Plaintiff Craig Helmker seeks review of the Commissioner's decision denying his claim for supplemental security income (SSI) under Title XVI of the Social Security Act.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1998). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant

to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health and Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was 51 years of age on the date of the Administrative Law Judge's (ALJ) decision. (Tr. 40). He left high school after the eleventh grade and previously worked as a laborer, material handler, bus cleaner, and porter. (Tr. 62). Plaintiff applied for benefits on June 27, 2011, alleging that he had been disabled since June 1, 2010, due to emphysema, arthritis, and a learning disability. (Tr. 70). Plaintiff's application was denied, after which time he requested a hearing before an ALJ. (Tr. 80–94). On December

4, 2012, Plaintiff appeared with his counsel before ALJ Lawrence Blatnik with testimony being offered by Plaintiff and a vocational expert (VE). (Tr. 35–67). In a written decision dated February 22, 2013, the ALJ determined that Plaintiff was not disabled. (Tr. 16–30). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1–3). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 415.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by his impairments

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the durations requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. § 404.1520(f)).

3

and that he is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Blatnik determined Plaintiff's claim failed at the fifth step of the evaluation. The ALJ initially found that Plaintiff had not engaged in substantial gainful activity since June 27, 2011. (Tr. 21). At the second step in the sequential evaluation, the ALJ determined Plaintiff had the following severe impairments: (1) osteoarthritis of the neck, shoulders and right ankle; (2) a history of substance/alcohol abuse, alcohol abuse in full substance remission; (3) depression; (4) borderline intellectual functioning; and (5) a personality disorder. (Tr. 21–22). At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (Tr. 22–24). At the fourth step, the ALJ found that Plaintiff retained the residual functional capacity (RFC) based on all the impairments, including substance-use disorder:

> to perform light work as defined in 20 CFR 416.967(b) with the following limitations: he can lift or carry a maximum of 20 pounds occasionally and 10 pounds frequently. In an eight-hour workday, the claimant can walk or stand up to two hours and sit for at least six hours. He can never climb ladders, scaffolds or ropes. The claimant can only occasionally climb ramps or stairs. He must avoid concentrated exposure to extreme cold and wetness. The claimant can only do simple unskilled work with a specific vocational preparation (SVP) rating of 1 or 2 that does not require claimant to read, write, compute, calculate, problem solve or reason. He is able to understand, remember and carry out only short simple instructions. In addition, the claimant is unable to maintain concentration and attention, or remain productive, for at least 25% of [the] work day and he can be expected to miss work, be late, or leave work early three or more times per month.

(Tr. 24). The ALJ next determined that Plaintiff was not able to perform any of his past relevant work. (Tr. 25). At the fifth step, and after considering the testimony of the (VE), the ALJ also found that there were

4

no jobs in the national economy that someone of Plaintiff's age, education, work experience, and RFC would be able to perform. (Tr. 26–27).

The ALJ then inquired into the materiality of Plaintiff's substance use, and determined that, without that disorder, Plaintiff would still have physical limitations and mental impairments, but they would not meet or medically equal any of the Listed Impairments. (Tr. 27). The ALJ found that, without the substance abuse, Plaintiff's RFC would allow him:

> to perform light work as defined in 20 CFR 416.967(b) with the following limitations: he can lift or carry a maximum of 20 pounds occasionally and 10 pounds frequently. In an eight-hour workday, the claimant can walk or stand up to two hours and sit for at least six hours. He can never climb ladders, scaffolds or ropes. The claimant can only occasionally climb ramps or stairs. He must avoid concentrated exposure to extreme cold and wetness. The claimant can only do simple unskilled work with a specific vocational preparation (SVP) rating of 1 or 2 that does not require claimant to read, write, compute, calculate, problem solve or reason. He is able to understand, remember and carry out only short simple instructions.

(Tr. 28). The only difference between the two RFCs is that the latter omits the limitation regarding the inability of Plaintiff to maintain concentration and attention, or remain productive for at least 25% of the work day and the expectation that Plaintiff could be expected to miss work, be late, or leave work early three or more times per month. (Tr. 25, 28).

The ALJ found that, even without the substance use, Plaintiff's impairments rendered him unable to perform past relevant work. (Tr. 29). In reevaluating Plaintiff under step 5, the ALJ used the VE's testimony from the administrative hearing that a person of plaintiff's age, education, work experience, and with the revised RFC (without the substance-use disorder) would be able to perform the requirements of several occupations such as hand packer (4,743 positions in the lower peninsula of the State of Michigan), inspector (2,923 positions in the lower peninsula), and assembler (2,045 positions in the lower peninsula).

5

(Tr. 63–64). Based on the VE's testimony, the ALJ concluded that, if Plaintiff stopped the substance use, he would be capable of performing work that exists in significant numbers in the national economy. (Tr. 30). Accordingly, the ALJ held that Plaintiff was not disabled under the framework of section 202.11 of the Medical–Vocational Guidelines. (Tr. 30).

Finally, the ALJ found that plaintiff's substance-use disorder "is a contributing factor material to the determination of disability because the claimant would not be disabled if he stopped the substance use." (Tr. 30) (citing 20 C.F.R. §§ 416.920(g) and 416.935). Accordingly, the ALJ determined that Plaintiff had not been disabled within the meaning of the Social Security Act at any time from the date of the application through the date of his decision. (Tr. 30).

## DISCUSSION

The Social Security Act, as amended in 1996, precludes the award of DIB and SSI benefits based on alcoholism and drug addiction. 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); 20 C.F.R. §§ 404.1535, 416.935; *see White v. Comm'r of Soc. Sec.*, No. 1:13–cv–172, 2014 WL 1028888, at *3 n. 3 (W.D. Mich. Mar.17, 2014) (*citing Bartley v. Barnhart*, 117 F. App'x 993, 998 (6th Cir.2004); *Hopkins v. Commissioner*, 96 F. App'x 393, 395 (6th Cir. 2004)). Plaintiff bears the burden of demonstrating that substance abuse was not a contributing factor material to a determination of his disability. *White*, 2014 WL 1028888 at *3 n. 3 (*citing Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122–25 (2d Cir.2012)).

Where, as here, an ALJ finds that a claimant is disabled, but there is medical evidence of drug addiction or alcoholism, the ALJ must determine whether the substance abuse is a contributing factor material to the determination of disability. *See* 20 C.F.R. §§ 404.1535(a), 416.935(a). The ALJ must identify those physical and mental limitations that would remain if the claimant stopped using drugs and

alcohol, and then assess whether the remaining limitations are disabling. *See* 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2). If the remaining limitations are not disabling, substance abuse is a contributing factor material to the determination of disability; and accordingly, the claimant cannot be considered disabled under the Social Security Act. 20 C.F.R. §§ 404.1535(b)(2)(I), 416.935(b)(2)(I). "The key factor ... in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether [the ALJ] would still find [the claimant] disabled if [he] stopped using drugs or alcohol." 20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1).

Plaintiff argues he should be found disabled because even without the substance use disorder, he meets the requirements of Listing 12.05 in the Listing of Impairments, and he is disabled under the Medical Vocational Guidelines.

### 1.     Listing 12.05(C)

Plaintiff argues that he is entitled to SSI benefits because he met the requirements of Listing 12.05(C), the listing for Intellectual Disability.[2] (Dkt. #13, PageID 307–09).

It is well established that a claimant must show that he satisfies all the individual requirements of a listing. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir.2003); *see also Perschka v. Commissioner*, 411 F. App'x 781, 786–87 (6th Cir.2010). The listing must be read as a whole, and Plaintiff has the burden of demonstrating that he meets all parts of the listing. "If all the requirements of the listing are not present, the claimant does not satisfy that listing." *Berry v. Comm'r of Soc. Sec.*, 34 F.

---

[2]Shortly after the ALJ's decision in this matter, the Commissioner modified Listing 12.05 to replace the phrase "mental retardation" with "intellectual disability." 78 Fed. Reg. 46,499 (August 1, 2013) (codified at 20 C.F.R. pts. 404 and 416). Because the change in terminology did not reflect any substantive change, the Court uses the newer phrase. 78 Fed. Reg. at 46,500–01; *see also Hickel v. Comm'r of Soc. Sec.*, 539 Fed. Appx. 980, 982 n.2 (11th Cir. 2013).

App'x 202, 203 (6th Cir.2002). "It is insufficient that a claimant comes close to satisfying the requirements of a listed impairment." *Elam*, 348 F.3d at 125.

The specific requirements of Listing 12.05 are as follows:

12.05: Intellectual Disability. Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

A. Mental incapacity as evidenced by dependence on others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;

OR

B. A valid verbal, performance, or full scale IQ of 59 or less;

OR

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

OR

D. A valid verbal, performance or full scale IQ of 60 though 70, resulting in at least two of the following:

    1. Marked restriction of activities of daily living; or
    2. Marked difficulties in maintaining social functioning; or
    3. Marked difficulties in maintaining concentration, persistence, or pace; or
    4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. It was Plaintiff's burden at step 3 of the sequential analysis to prove that he met or equaled the listing's diagnostic description and one of the four severity criteria

specified in parts A, B, C, or D. *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). Thus, in order to prove, as Plaintiff alleges, he meets Listing 12.05(C), Plaintiff was required to demonstrate: (1) he experienced "significantly subaverage general intellectual functioning with deficits in adaptive functioning that initially manifested during the developmental period" (i.e., the diagnostic description); (2) he has a "valid verbal, performance, or full scale IQ of 60 through 70"; and (3) he suffers from "a physical or other mental impairment imposing an additional and significant work-related limitation of function." *West v. Comm'r of Soc. Sec.,* 240 Fed. App'x. 692, 697-98 (6th Cir. 2007) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05(C); *Foster*, 279 F.3d 348, 354-55 (6th Cir. 2001).

The Commissioner concedes that Plaintiff suffered from an impairment that imposed an additional limitation on Plaintiff's ability to function. (Dkt. #16, PageID 322–23). The Commissioner also concedes that the ALJ's determination that Plaintiff did not have a valid IQ score is not supported by substantial evidence, thus rendering the analysis faulty. (Dkt. #16, PageID 323). The remaining issue, then, is whether Plaintiff experienced significantly subaverage general intellectual functioning with deficits in adaptive functioning that initially manifested during the development period. The ALJ did not explicitly address this issue. Given the Commissioner's concessions regarding the IQ score, resolution of the remaining part of Plaintiff's claim would require the Court to undertake a review of Plaintiff's claim in the first instance. This Court does not perform an exhaustive de novo review of the evidence on appeal. *Brainard*, 889 F.2d at 681. A review of the evidence, however, does raise sufficient factual disputes that warrant further consideration. Accordingly, this matter will be vacated and remanded under sentence four of § 405(g). On remand, the Commissioner should reevaluate whether Plaintiff meets or equals a listing in the Listing of Impairments.

## 2. Medical Vocational Guidelines

Plaintiff argues that he is disabled pursuant to the grids, a determination made at step 5 of the sequential evaluation process. The Court disagrees.

The medical-vocational guidelines, also known as the "grids," consider four factors relevant to a particular claimant's employability: (1) residual functional capacity, (2) age, (3) education, and (4) work experience. 20 C.F.R., Part 404, Subpart P, Appendix 2. Social Security regulations provide that "[w]here the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled." 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00. In other words, a claimant may be awarded benefits if he satisfies the requirements of one of the particular rules correlating to a finding of disability. *See Russell v. Comm'r of Soc. Sec.*, 20 F. Supp.2d 1133, 1134 (W.D. Mich.1998).

The ALJ found that Plaintiff possessed the following vocational factors: (1) was limited to light work; (2) was closely approaching advanced age; (3) possessed a limited education; and (4) his previous work skills were not transferrable. (Tr. 26). According to the grids, an individual possessing these particular vocational factors is considered "not disabled." *See* 20 C.F.R., Part 404, Subpart P, Appendix 2, § 202.11. As alluded to above, because Plaintiff possessed additional nonexertional impairments, the ALJ used § 202.11 as a framework and consulted a VE as to whether jobs exist in the economy that someone similar to Plaintiff could perform (here without the substance disorder). The VE testified that there were. (A.R. 30). Relying on the VE's testimony, therefore, the ALJ found that Plaintiff was not disabled. (A.R. 30).

Plaintiff argues the ALJ erred in finding he had a limited education, and that he should have been classified as illiterate. *See* 20 C.F.R § 416.964(b)(1), (3). Had the ALJ properly found him illiterate, Plaintiff reasons, the ALJ would have determined Plaintiff fell between §§ 201.09 and 202.09–leading to a conclusion Plaintiff was disabled. (Dkt. #13, PageID 310). Whether Plaintiff is literate is not an implicit finding, however. Rather, it is a question of his educational level. "Education is primarily used to mean formal schooling or other training which contributes to your ability to meet vocational requirements, for example, reasoning ability, communication skills, and arithmetical ability." 20 C.F.R §§ 404.1564(a) and 416.964(a). The regulations define levels of education as illiteracy, marginal education, limited education, high school education and above, and the inability to communicate in English. *See* 20 C.F.R. §§ 404.1564(b) and 416.964(b).

Here, the ALJ found that "[t]he claimant has a limited education and is able to communicate in English (20 CFR 416.964)." (Tr. 26). The ALJ's finding is supported by substantial evidence. In his disability report dated June 27, 2011, Plaintiff stated that he could speak and understand English. (Tr. 168). He attended special education classes, and completed the eleventh grade. (Tr. 170). Thus, Plaintiff attained an educational level (i.e., a limited education) that the regulations define as follows:

> Limited education. Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education.

20 C.F.R. § 416.964(b)(3). In evaluating educational levels, the regulations recognize that "numerical grade level that you completed in school may not represent your actual educational abilities" which "may be higher or lower." 20 C.F.R. §§ 404.1564(b) and 416.964(b). However, "if there is no other evidence to

contradict it," the agency will use the claimant's numerical grade level to determine his or her educational abilities. *Id.*

Although Plaintiff completed the eleventh grade, he contends that he is illiterate, an educational level which the regulations define as follows:

> Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling.

20 C.F.R. § 416. 964(b)(1). In support of this claim, Plaintiff testified at the administrative hearing that he cannot read, and could only write his name. (Tr. 46).

Contrary to Plaintiff's assertion that there is no evidence that is inconsistent with a finding that he is illiterate, however, the record demonstrates that Plaintiff is at least rudimentary literate. Darrell Snyder, Ph.D., opined that Plaintiff would have difficulty reading complex or detailed instructions, implying that Plaintiff would be able to understand less complex instructions. (Tr. 78). An evaluation when Plaintiff was fourteen years old found he had "limited but solid" math reasoning skills. (Tr. 156). An earlier evaluation found Plaintiff could read at a grade level of 2, and had a grade level of 2.6 in math. (Tr. 158). Plaintiff's past employments ended not because of his illiteracy, but because of the economy and because he was ill. (Tr. 44–45). Plaintiff is able to read road signs. (Tr. 237). While Plaintiff may have substantial difficulties in this area, such difficulties are adequately accounted for in his RFC. Accordingly, Plaintiff's claim here fails.

Finally, Plaintiff asks the Court to order the Commissioner to award SSI benefits. (Dkt. #13, PageID 311). "[T]he court can reverse the [Commissioner's] decision and immediately award benefits only

if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *See Faucher v. Secretary of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir.1994). "A judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." *Id.*; *see Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir.1985); *see also Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 865 (6th Cir.2011). Here, the Commissioner's decision is being reversed because the ALJ's analysis at step 3 was not supported by substantial evidence, not because the record *necessarily* strongly establishes Plaintiff's entitlement to benefits.

## CONCLUSION

For the reasons set forth herein, the Commissioner's decision will be **REVERSED** and **REMANDED**. On remand, the Commissioner should reevaluate whether Plaintiff meets or equals a listing in the Listing of Impairments. A separate judgment shall issue.

Dated: November 30, 2015 /s/ Paul L. Maloney
PAUL L. MALONEY
United States District Judge